# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KEITH JOHN ALOMBRO (#429525)**                              **CIVIL ACTION**

**VERSUS**

**ANGELO TARVER, ET AL.**                                           **NO. 15-548-JJB-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 24, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KEITH JOHN ALOMBRO (#429525)**                          **CIVIL ACTION**

**VERSUS**

**ANGELO TARVER, ET AL.**                                **NO. 15-548-JJB-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions to Dismiss (R. Docs. 11 and 26) and Motions for Summary Judgment (R. Docs. 19 and 24). The Motion to Dismiss filed on behalf of defendants Tarver, Cleveland, Hughes, Vannoy and Wilson (R. Doc. 11), is opposed. *See* R. Doc. 15. No oppositions have been filed in response to the other motions.

The *pro se* plaintiff, an inmate incarcerated at the Dixon Correctional Institute ("DCI"), Jackson, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Angelo Tarver, Dr. Robert Cleveland, Nurse Jackie Hughes, Warden Darrel Vannoy, Colonel David Wilson, and Unknown McDonald[1] complaining that his constitutional rights have been violated due to the defendants' deliberate indifference to his serious medical needs.

The Court will first address the defendants' Motions for Summary Judgment (R. Docs. 19 and 24). The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Material Facts, and a certified copy of the plaintiff's pertinent Requests for Administrative Remedy. The plaintiff has not filed an opposition to the Defendants' Motions for Summary Judgment.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to

---

[1] In his Motion for Summary Judgment, this defendant is identified as Major Doug McDonald. (R. Doc. 24 at 1).

judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff sets forth in lengthy detail a summary of medical treatment he has allegedly received and been denied from March 19, 2013 through July

1, 2015.  The allegations of the plaintiff's Complaint focus primarily upon alleged delays in medical care and failure to provide him with the medications prescribed to him, resulting in severe pain.  *See* R. Docs. 1 and 6.

In response to the plaintiff's allegations, the defendants contend, *inter alia*, that the plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies. (R. Docs. 19 and 24).  In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[2]  This provision is mandatory and applies broadly to "all inmate suits about prison life."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions.  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose.  *Id.*

A review of the certified copy of the plaintiff's pertinent Requests for Administrative Remedy shows that the plaintiff submitted two ARPs within the complained of timeframe.  The

---

[2] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

plaintiff's first ARP ("2014-816") is dated October 30, 2014.  The plaintiff complained therein regarding the medical care received by him from March 19, 2013 through May 21, 2014, disciplinary actions taken against him, and intimidation and harassment on the part of various prison officials.  *See* R. Doc. 19-3, p. 4-31.  This ARP was rejected on November 20, 2014 for containing multiple issues, being too lengthy, and because it pertained to disciplinary matters.  *See* R. Doc. 19-3, p. 3.

The plaintiff complained in his second ARP ("2015-621"), dated July 4, 2015, of the medical care received by him from March 31, 2015 through June 7, 2015 and disciplinary action taken against him.  *See* R. Doc. 19-4, p. 2-5.  The plaintiff's second ARP was rejected on July 28, 2015 for containing multiple issues and because it pertained to disciplinary matters.  *See* R. Doc. 19-4, p. 2; 7.

Subsection I of the Louisiana Administrative Remedy Procedure provides in pertinent part, "The ARP screening officer shall furnish the offender with notice of the initial acceptance or rejection of the request to advise that his request is being processed or has been rejected…If a request is rejected, it must be for one of the following reasons, which shall be noted on the request for administrative remedy or on the offender's written letter…(b). There are specialized administrative remedy procedures in place for this specific type of complaint, such as: (i). disciplinary matters;…(g). The offender has requested a remedy for more than one incident (a multiple complaint)…"  *See* La. Admin. Code Tit. 22, PT. I, § 325(I).

The Louisiana Administrative Remedy Procedure further provides in pertinent part, "**Prior to filing a grievance in federal or state court**, unless specifically excepted by law, the offender must exhaust all administrative remedies.  **Exhaustion occurs** (a) when the relief requested has been granted; (b) when the second step response has been issued; or **(c) when the**

**grievance has been screened and rejected for one of the reasons specified in Subsection I,**

**Grievance Screening**." *See* La. Admin. Code Tit. 22, PT. I, § 325(F)(3)(a)(viii)(c) (emphasis

added).  This provision was made effective October 20, 2013.  Defendants have not pointed the

Court to any decision specifically addressing the effect of this revision to the Code.

Based on a plain reading of the foregoing, pursuant to § 325(F)(3)(a)(viii)(c), the Code

provides that exhaustion for purposes of filing suit in federal court occurs under multiple

circumstances, specifically including when they were rejected for the reasons specified in §

325(I).  At least one Court has applied these provisions to find that a plaintiff's claims were

exhausted upon rejection in the screening process.  In *Anderson v. Wilkinson*, 2014 WL 992078

(W.D. La. Mar. 13, 2014), the defendants filed a Motion for Summary Judgment asserting that

the plaintiff failed to exhaust his administrative remedies as required by the PLRA.  Anderson's

grievance was rejected pursuant to § 325(I)(a)(ii)(f) because the request was not written by the

offender and a waiver was not approved.  Relying upon § 325(I)(1)(a)(i) and (b), the Court

concluded that because Anderson's grievance was rejected at the first step, Anderson was not

required to pursue the grievance to the second step.  The Court further concluded that upon

rejection of Anderson's grievance by the screening officer for a reason specified in § 325(I), the

grievance was exhausted under § 325(F), and the Court denied the defendants' Motion for

Summary Judgment.

Neither party briefed the effect of the definition of exhaustion in § 325, the applicability

to the plaintiff's rejected ARPs, or how § 325 comports with the requirements of 42 U.S.C.A. §

1997e(a); therefore, the Court ordered the parties to submit supplemental briefs to the Court

referencing and discussing all relevant authority which may potentially resolve the foregoing

conflict as set forth above.  *See* R. Doc. 56.  The defendants argue that other provisions of the

Louisiana Administrative Remedy Procedure provide the correct definition of exhaustion that comports with the requirements of 42 U.S.C.A. § 1997e(a).

Simply put, the Code provides that "exhaustion occurs" under three circumstances. Given defendants' acknowledgment that one of those circumstances is present here, based on a plain reading of the aforementioned administrative provisions, the Court does not conclude that the defendants are entitled to summary judgment at this time on the grounds that the plaintiff failed to exhaust his administrative remedies.

Turning to Dr. Tarver's assertion that the claims asserted against him in this proceeding are time-barred, specifically, the defendant asserts that more than one year of un-tolled time elapsed after the referenced medical care before the plaintiff filed his Complaint herein. (R. Doc. 19). As discussed hereafter, the Court finds that the defendant Dr. Tarver's assertion is correct.

Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492.[3] Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues "when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citations and internal quotation marks omitted). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Id.* Under Louisiana law, a party pleading a limitations defense normally has the burden of establishing the elements of that defense. *See Savoy v. St. Landry Parish Council*, 2009 WL 4571851, *3 (W.D.

---

[3] *See* La. Civ. Code Art. 3456

La. Dec. 1, 2009). However, when the face of the plaintiff's Complaint reflects that more than a year has passed since the events complained of, the burden of proof shifts to the plaintiff to show that the limitations period has been interrupted or tolled. *Id.*

In the instant case, the complained of actions or inactions on the part of Dr. Tarver occurred between March 19, 2013 and September 25, 2013. Accordingly, the plaintiff's claims against defendant Dr. Tarver accrued, at the latest, on September 25, 2013, and the plaintiff had one year within which to file a complaint in this Court. Ordinarily, therefore, any claims that the plaintiff may have had against defendant Dr. Tarver would be seen to have prescribed no later than September 25, 2014, the one-year anniversary of the end of the complained of conduct. Further, inasmuch as the plaintiff did not file his federal Complaint until, at the earliest, July 28, 2015, the date that he apparently signed it, it appears from the face of the Complaint that his claim is time-barred. Accordingly, the burden of proof shifts to the plaintiff to show that the limitations period in this case was interrupted or tolled during the one-year period.

Ordinarily, this Court is obligated to take into account the time during which the administrative proceedings were pending within the prison system. *See Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999) (finding that the pendency of a properly-filed administrative grievance will act to toll or suspend the running of the one-year limitations period for a prisoner's claim). In this case, however, the plaintiff's ARP DCI-2014-86, filed on October 30, 2014, was itself filed more than one year after the complained of actions or inaction on the part of defendant Dr. Tarver. As such, this ARP can have no effect upon the limitations period applicable to the plaintiff's claims against defendant Dr. Tarver. Accordingly, the plaintiff's claims against Dr. Tarver prescribed prior to the filing of the plaintiff's Complaint, and Dr. Tarver is entitled to summary judgment.

Turning to the defendants' Motions to Dismiss (R. Docs. 11 and 26), defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim against the defendants in their official capacity. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claims asserted against defendants in their official capacity for monetary damages are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claim for prospective injunctive relief asserted against defendants in their official capacities also remains viable because such a claim is not treated as a claim against the state. *Will v. Michigan Department of State Police*, *supra*, 491 U.S. at 71 n.10. Of course, the plaintiff must be able to prove a deprivation of his constitutional civil rights in order to obtain any entitlement to relief.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint as amended, the plaintiff alleges the following:  On March 19, 2013, the plaintiff made a sick call due to pain on the left side of his back and in his left shoulder.  The plaintiff was seen by Dr. Tarver to whom he disclosed that he was Hepatitis C positive, and also complained of weight loss and "issues" with urination.  Dr. Tarver increased the plaintiff's dosage of Kepra from 1500mg to 2000mg, and ordered a double meal portion and that plaintiff be assigned a bottom bunk.  Dr. Tarver also prescribed Naprosyn for pain.

On April 14, 17, 18, 22, and 23, 2013, the plaintiff was transferred to the main compound for doctor appointments, but each time the appointment was cancelled.  On April 23, 2013, the plaintiff was seen by Dr. Beryl, who directed the plaintiff to take 325mg of Tylenol three times per day for pain.

On May 1, 2013, the plaintiff declared himself as a medical emergency due to pain from working with hemorrhoids.  Medication was ordered but was never administered.  In July of 2013, the plaintiff was seen by NP Honora who informed the plaintiff that x-rays showed degeneration in his lower spine and gallstones.  An ultrasound was ordered.  The plaintiff made sick calls on August 5, 8, 23, 27, and 28, 2013, and was seen by Dr. Tarver on August 28, 2013.  The plaintiff's prostate was inflamed and bleeding, and two shots were administered.  On August 30, 2013, the plaintiff discussed his medical conditions and treatment with Warden Coston.

On September 4, 2013, the plaintiff was seen by NP Honora and was informed that there was a bacterial infection in his prostate.  NP Honora prescribed new medications and the plaintiff was given a three day no duty status.  On September 9, 2013, the plaintiff was complaining of vomiting and light headedness.  He was told to sit in the infirmary waiting room for 15 minutes in order to retest his blood pressure, which was low.  The plaintiff received no additional medical treatment and was sent back to the field for work.  On September 13, 2013, the plaintiff was

transferred to the emergency room at Lallie Kemp for pain, vomiting, light headedness, and low blood pressure. The plaintiff was informed that his gallbladder needed to be removed. The surgery was not performed, and the plaintiff was transferred back to DCI.

On September 14, 15, 17, and 18, 2013 the plaintiff's medications were not administered as ordered. The plaintiff began receiving Ultram and Cipro as ordered after seeing Dr. Tarver on September 26, 2013. On October 9 and 13, 2013 the plaintiff did not receive his pain medications as ordered. On October 13 and again on October 23, 2013, he declared himself a medical emergency due to severe pain resulting from lack of pain medications.

The plaintiff saw Dr. Cleveland on October 25, 2013, and complained to him of severe pain due to not receiving his pain medications as ordered. The plaintiff did not receive his pain medications on October 25, 26, and 27, 2013. After receiving his pain medications on October 28, 2013, the plaintiff wrote to the medical department on October 29, 2013 regarding repetitive charges for sick calls and medical emergencies. On November 11, 2013, the plaintiff wrote to the investigations department regarding the theft of his medications.

The plaintiff's pain medication was not administered as ordered on December 2, 7, 9, 12, and 16, 2013. On December 16, 2013, the plaintiff was seen in the infirmary and complained about the lack of pain medication. Nurse Johnson reordered the plaintiff's Ultram.

On December 25, 2013, Sgt. Webb refused to give the plaintiff his Ultram. Nurse Jones made the plaintiff an appointment for the following day. The plaintiff was seen by NP Honora and was given a document authorizing "pill-call" to administer Ultram. Nevertheless, Sgt. Webb still refused to administer the medication. On December 27, 2013, the plaintiff was administered Ultram but noticed that 43 pills were missing from the blister pack. The following day, the

plaintiff was not administered Ultram or Robacin and he reported the missing pills to Lt. McCarthy and Sgt. Haynes.

On January 14, 2014, the plaintiff met with Col. Wilson and Cpt. Tate regarding his medical conditions, stolen medications and resulting severe pain.  Col. Wilson informed the plaintiff that he would make sure that the plaintiff received his medications.

On January 16, 2014, the plaintiff did not receive his pain medication as ordered, and was told the medication could not be reordered until January 26, 2014.  On January 21, 2014, the plaintiff could not report to work due to severe pain.  He complained of excruciating abdominal pain at the work gate, but was handcuffed and sent to administrative segregation.  He then complained to Lt. Johnson of severe pain.  He declared himself a medical emergency and was seen by Nurse Jones three hours later.  Nurse Jones stated that there was nothing she could do for the plaintiff, and left without performing an examination.

On January 22, 2014, the plaintiff appeared before the disciplinary board and explained his medical conditions and the theft of his medications.  The plaintiff was found guilty and sanctioned to 30 days confinement, loss of Trustee status, and ten days disciplinary detention (isolation).  Following the hearing, the plaintiff made a sick call.  Nurse Jones arrived and left after telling the plaintiff, "My hands are tied."  The plaintiff then declared himself a mental health emergency.  The plaintiff had not received any medications since December 30, 2013.  Mr. Thurman told the plaintiff he would look into the plaintiff's lack of treatment and care.

On January 30, 2014, the plaintiff began receiving all of his medications.  On February 2, 2014, the plaintiff declared himself a medical emergency and was seen by NP Honora.  Toradol was administered and an appointment was made for the plaintiff to see Dr. Cleveland the following week.  The plaintiff wrote to Warden Vannoy on February 5, 2014 regarding his

medical problems and lack of treatment. On February 13, 2014, the plaintiff declared himself a medical emergency due to severe pain and was administered Naprosyn per Dr. Cleveland.

The plaintiff was seen by Dr. Cleveland on February 17, 2014. Dr. Cleveland ordered surgery for the removal of the plaintiff's gallbladder, increased the plaintiff's dosage of Ultram and prescribed Cipro for the plaintiff's prostate. The plaintiff was then seen by a specialist, Dr. John Doe, who referred him to Dr. Mooney. On March 17, 2014, the plaintiff was seen by Dr. Mooney who informed the plaintiff that his medical records troubled her, and that his gallbladder needed to be removed. On March 24, 2013, the plaintiff became extremely sick and began vomiting. Thereafter, the plaintiff began experiencing night sweats, weakness, and loss of appetite. On April 1, 2014, he declared himself a medical emergency and Milk of Magnesia was administered. On the same day he was written up for failing to report to work.

On April 3, 2014, he was brought before a disciplinary board and again explained his medical problems to the board. The write up was dismissed. Following the hearing, the plaintiff made a sick call. He was told by Nurse Flo that there was nothing she could do for him. The plaintiff then wrote to Warden Vannoy regarding his ongoing medical problems and lack of treatment. He also requested a meeting.

The plaintiff was called to Col. Smith's office on April 4, 2014. He explained his medical problems, the lack of a duty status and the resulting write ups. The plaintiff was later called to medical and a duty status was issued. The plaintiff complaints of pain, vomiting and night sweats persisted through April 22, 2014 without treatment. On April 23, 2014, the plaintiff was seen by Dr. Cleveland, who discontinued Kepra and Robacin and issued the plaintiff a 14 day duty status and one year of double portions to combat the plaintiff's 50 pound weight loss.

The plaintiff continued to feel ill.  On May 5, 2014, his gallbladder was removed.  The plaintiff still continued to feel ill, but on May 21, 2014, Dr. Cleveland discontinued his duty status and the plaintiff was sent to the field for work.  On June 11, 2014, new medications were prescribed.  The plaintiff was injured on July 1, 2014 while working despite his numerous medical conditions.  New medications were prescribed on July 7, 2014, and the plaintiff later made a sick call due to adverse side effects.

In November and December of 2014, the plaintiff made sick calls complaining that his medications were constantly running out and not being reordered, and that the medications he was receiving were not alleviating his pain.  In April of 2015, the plaintiff again began to not receive his medications as ordered.  On April 4, 2015, he spoke to Major McDonald and informed him of the problem.  He also requested that the infirmary be called and that he be transported to the infirmary due to severe pain.  Major McDonald refused.  Major McDonald also refused to "call rank."  The plaintiff was then placed in administrative segregation for Defiance.

On April 7, 2015, the plaintiff was seen by Dr. Cleveland regarding his lack of medications and severe pain.  Dr. Cleveland discovered that the plaintiff's Baclofen had not been reordered, but the plaintiff's Neurontin and Motrin were due to arrive the following day.  On April 8, 2015, after not receiving his medications for seven days, the plaintiff was administered Neurontin and Motrin.

On April 10, 2015, the plaintiff was brought before a disciplinary board.  Despite explaining his medical conditions, constant pain and inability to work due to not receiving his medications, the plaintiff was found guilty and sentenced to extended lockdown.  During the time the plaintiff was in extended lockdown, he did not receive one or more of his medications

for 27 of 59 days.  On July 1, 2015, the plaintiff made a sick call regarding stomach pain and problems urinating.

The plaintiff alleges that defendant Dr. Cleveland failed to appropriately respond to his complaints, the worsening of his symptoms, the failure of prison officials to administer his medications as ordered.  The plaintiff further alleges that Dr. Cleveland was negligent in his care and treatment of the plaintiff.

With regards to defendant Nurse Hughes, the plaintiff alleges that defendant Nurse Hughes is the person responsible for "pill-call,' including the reordering of the plaintiff's medications, and her negligence was the cause of the plaintiff constantly being out of his medications.  He asserts that due to the medications prescribed, she was aware of his conditions and nevertheless failed to perform her duties.

As to defendant Warden Vannoy, the plaintiff alleges that Warden Vannoy was obligated, as his custodian, to ensure that the plaintiff received adequate care and treatment, and despite being put on notice of the plaintiff's lack of treatment and the theft of his medications, failed to do so.  With regards to defendant Col. Wilson, the plaintiff alleges that despite being informed of the theft of the plaintiff's medications, and assuring the plaintiff that he would receive his medications, the plaintiff still did not receive his medications as ordered due to Col. Wilson's failure to perform his official duties.  Finally, the plaintiff alleges that defendant Major McDonald was the person responsible for issuing the plaintiff his medications, and despite being informed of the plaintiff's medical conditions refused to perform his duties and assist the plaintiff in obtaining medical care.

In response to the plaintiff's allegations, the defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the

defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's federal constitutional or statutory rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.  *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.*  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  *Id.*  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  *Id.*

Undertaking the qualified immunity analysis, the Court finds that the defendants' Motions (R. Docs. 11 and 26) should be granted in part, and denied in part.  Specifically, the Court concludes that the allegations of the plaintiff's Complaint, as amended, accepted as true for the purposes of the defendants' Motions to Dismiss, fail to state a claim for a violation of the plaintiff's due process rights, but are sufficient to state a claim for deliberate indifference to his serious medical needs.

Regarding the plaintiff's claim of deliberate indifference to his serious medical needs, in order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97,

106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).  Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue.  *Estelle v. Gamble*, *supra*.  Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).  As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble*, *supra*.  Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

As outlined above, the plaintiff alleges that he was not provided with his medications as ordered, sometimes for several days at a time, and that the surgery to remove the plaintiff's gallbladder was delayed for several months.  The plaintiff alleges to have suffered periods of severe pain as a result.  He also alleges that his requests for medical care and his complaints of pain were ignored by the defendants.  The allegations of the plaintiff's Complaint, accepted as true for purposes of the defendants' Motions to Dismiss, demonstrate that the defendants were made aware of, and disregarded, a substantial risk to the plaintiff's health.  As such, the

Complaint as amended, states a claim for deliberate indifference to the plaintiff's serious medical needs, and the Motions to Dismiss should be denied in this regard.

To the extent the plaintiff is complaining of the defendants' failure to appropriately respond to his informal complaints, he fails to state a meritorious claim inasmuch as an inmate plaintiff is not constitutionally entitled to an investigation into his administrative claims or informal complaints, or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless"). As such, the plaintiff's claim lacks an arguable basis in the law.

To the extent the plaintiff is complaining of a violation of his procedural due process rights in connection with the aforementioned disciplinary charges and hearings, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved. *Mahogany v. Miller,* 252 F.App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Id*. at 373-74.  This conclusion is equally applicable in the context of prison disciplinary proceedings.  *See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation");  and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights.  *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989).  Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights.  *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force.  Normally, however, the Due Process Clause, itself, does not afford an inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 59 (1974).  It is only those restrictions that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests.  *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection. *Sandin,* 515 U.S. at 484.  In the instant case, the plaintiff was sentenced to a quarters change to extended lockdown and loss of his trustee status.  This punishment does not amount to disciplinary action that infringes upon a constitutionally protected liberty interest that would invoke the protection of the Due Process Clause of the Fourteenth Amendment.  *See Dickerson v. Cain,* 241 F.App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J at LSP presents "an atypical or significant hardship beyond the ordinary incidents of prison life").  *See also Lewis v. Dretke*, 54 Fed. Appx. 795 (5th Cir. 2001)*, citing Sandin v. Conner,* 515 U.S. 472 (1995*)* (A loss of trustee status and removal from a work program do not constitute atypical punishment within the context of prison life which would entitle the plaintiff to additional protections under the Due Process Clause.)

Finally, to the extent the plaintiff is seeking to invoke the supplemental jurisdiction of this court over the plaintiff's potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367.  In the instant case, the plaintiff's state law claims would substantially predominate over the claims over which the district court has original jurisdiction, and the Court further recommends that the exercise of supplemental jurisdiction over the plaintiff's state law claims be declined.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment filed on behalf of defendants Tarver, Cleveland, Hughes, Vannoy, and Wilson (R. Doc. 19) be granted in part, and that claims against defendant Dr. Tarver be dismissed with prejudice as prescribed.  In all other regards, it is recommended the Motion (R. Doc. 19) and the Motion for Summary Judgment filed on behalf of defendant McDonald (R. Doc. 24) be denied.  It is further recommended that the defendants' Motions to Dismiss (R. Docs. 11 and 26) be granted in part, and that the plaintiff's claims against the defendants for failure to respond to his informal complaints and violations of his due process rights be dismissed.  It is further recommended that the defendants' Motions to Dismiss be denied as to the plaintiff's claim of deliberate indifference to his serious medical needs, and that this matter be referred back to the undersigned for further proceedings.  It is further recommended that the exercise of supplemental jurisdiction be declined as to the plaintiff's state law claims.

Signed in Baton Rouge, Louisiana, on August 24, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**